IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:19CR228 |
|---|---|---|
| Plaintiff, | ) ) ) | JUDGE SARA LIOI |
| v. | ) ) ) | |
| ANTHONY L. INGRAM, | ) ) | UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Peter E. Daly and Aaron P. Howell, Assistant United States Attorneys, and respectfully submits the following memorandum setting forth the United States of America's position regarding sentencing for Defendant ANTHONY L. INGRAM.

**I.      Offense Level Computation**

The United States agrees with the Offense Level Computation included in the Final Presentence Investigation Report ("PSI").

| COUNT 1: Kidnapping (18 U.S.C. § 1201(a)(1)) | | |
|---|---|---|
| Base offense level | 32 | §2A4.1(a) |
| Dangerous weapon used | +2 | §2A4.1(b)(3) |
| Sexual exploitation of victim | +6 | §2A4.1(b)(5) |
| Subtotal Offense level | 40 | |

**II.** <u>Use of a Dangerous Weapon, U.S.S.G. § 2A4.1(b)(3)</u>

In response to the PSI, Defendant first objects to the two-level increase in the offense level for the use of a dangerous weapon and argues that the application of the enhancement is inconsistent with *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). ECF at Doc. 42, PageID 263. Specifically, Defendant states that the Probation Officer impermissibly relied on the Application Notes to U.S.S.G. §§ 2A4.1 and 1B1.1 to determine that the enhancement applied. *Id*. Defendant takes particular issue with the Probation Officer's reference to Application Note 1(E) of § 1B1.1, which indicates that an object used to create the impression that the object is a weapon qualifies as a "dangerous weapon" under the guidelines. *Id*.

Defendant's reliance on *Havis* is misplaced. The Court in *Havis* determined that Application Note 1 to U.S.S.G. § 4B1.2 "deserve[d] no deference" from the sentencing court because the note added to, rather than simply interpreted, the definition of "controlled substance offense" contained in the text of the guideline. *Havis*, 927 F.3d at 386-87. The Court further stated that it "need not accept an interpretation that is 'plainly erroneous or inconsistent with the' corresponding guideline." *Id*. (quoting *Stinson v. United States*, 508 U.S. 36, 45 (1993)). Defendant attempts to analogize the *Havis* decision to the facts of the instant case by arguing that the definition of "dangerous weapon" contained in Application Note 1(E) to § 1B1.1 is inconsistent with the text of § 2A4.1, and that the Court should therefore disregard it. ECF at Doc. 42, PageID 263. To determine that the dangerous weapon enhancement applies in the instant case, however, the Court need not look any further than the text of § 2A4.1, which states, "If a dangerous weapon was used, increase by 2 levels." U.S.S.G. § 2A4.1(b)(3). Because Defendant used a BB gun, which actually is a dangerous weapon, to threaten the victim,

2

Application Note 1(E)'s inclusion of objects used to give the impression of a weapon in the definition of "dangerous weapon" is irrelevant. *Havis* does not apply in this context.[1]

Federal courts, including the Sixth Circuit, have repeatedly determined that a BB gun or pellet gun is a dangerous weapon. *See United States v. Winters*, 247 F. App'x 665, 669-70 (6th Cir. 2007) (non-functioning BB gun qualified as a dangerous weapon); *United States v. Newbern*, 451 F. App'x 242, 249 (3rd Cir. 2011) (defendant used a dangerous weapon in pistol whipping victim with BB gun); *United States v. Dunigan*, 555 F.3d 501, 506-07 (5th Cir. 2009) (recognizing that a BB gun is capable of inflicting serious bodily injury); *United States v. Bey*, 748 F.3d 774, 777-78 (7th Cir. 2014) (noting that pellet guns are not harmless, as "[p]eople have been killed by them."). Moreover, in a prosecution for bank robbery under 18 U.S.C. § 2113(d), the Sixth Circuit found that even a toy gun satisfied the statutory element of "dangerous weapon or device." *United States v. Medved*, 905 F.2d 935, 939-40 (6th Cir. 1990). In *Medved*, the Court observed that "a toy which looked like a real gun could be a dangerous weapon or device, and its use could put people's lives in jeopardy." *Id*. (internal quotes omitted). The Court further noted that "the apprehension created by the display of what appears to be a genuine gun can bring on heart attacks and other untoward medical consequences." *Id*. None of the cases cited above relied on the application notes of the Guidelines in determining that a BB gun, pellet gun, or even toy gun can constitute a dangerous weapon. Because it is similarly unnecessary in the instant case to consider anything except the text of § 2A4.1(b)(3), *Havis* is not implicated.

---

[1] The United States believes that given the facts of the instant case, the text of § 2A4.1(b)(3) is sufficient to render the dangerous weapon enhancement applicable. To the extent that Defendant raises an issue pursuant to *Havis*, however, the government does not agree that the definitions of "dangerous weapon" and "firearm" contained in Application Notes 1(E) and (H), respectively, are "plainly erroneous or inconsistent" with § 2A4.1(b)(3). Rather, those notes provide interpretations of the Guidelines text which are consistent with such text, as well as with federal case law as outlined in this Sentencing Memorandum.

In *McLaughlin v. United States*, 476 U.S. 16 (1986), the United States Supreme Court held that an unloaded gun qualified as a "dangerous weapon" for purposes of a federal bank robbery under 18 U.S.C. § 2113(d).  There, the Court held:

> Three reasons, *each independently sufficient*, support the conclusion that an unloaded gun is a "dangerous weapon."  First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place.  In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.  Finally, a gun can cause harm when used as a bludgeon.

*Id*. at 17-18 (emphasis added).  In a footnote, the Court added that the floor debate in Congress prior to the passage of 18 U.S.C. § 2113(d) "indicates that Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article (such as a wooden gun) as 'dangerous' within the meaning of the statute."  *Id*. at n. 3.

Though it was in the context of the bank robbery statute, the Court's reasoning, coupled with Congress' apparent intent, is instructive as to the scope of the term "dangerous weapon" in relation to violent criminal offenses like the kidnapping Defendant committed in the instant case.  Indeed, the BB gun that Defendant used is essentially no different than the unloaded gun at issue in *McLaughlin*.  The evidence and testimony at trial in the instant case showed that the BB gun was similar, if not identical, in size, weight, shape, and color to a real firearm.  Both are "characteristically dangerous" as manufactured.  *See* Exhibits 1 and 2.  Neither the BB gun nor the unloaded gun were capable of firing a bullet at the time they were used (though the BB gun could actually expel a projectile).  The victim testified at trial that Defendant held the gun to her head and her side in order to instill fear and to force her to submit to the sexual assault.  Finally, given its physical similarity to a real firearm, the BB gun also could be used as a bludgeon.  Each

of the three reasons cited in *McLaughlin* which render an unloaded gun a dangerous weapon applies with equal force to the BB gun used in the instant case.

For all of the reasons stated above, the two-level enhancement for use of a dangerous weapon under § 2A4.1(b)(3) is appropriate.

### III.     Sexual Exploitation of the Victim, U.S.S.G. § 2A4.1(b)(5)

Defendant also objects to the six-level increase in the offense level for the sexual exploitation of the victim. ECF at Doc. 42, PageID 264. Defendant argues that the application of the enhancement results in double-counting because he was indicted for kidnapping for the purpose of committing a sexual assault. *Id*. As the Probation Officer noted in his response to the objection, however, the sexual exploitation of the victim is a specific offense characteristic of the kidnapping guideline, § 2A4.1. That is, the offense level calculation for all kidnapping offenses begins at Base Offense Level 32. U.S.S.G. Appendix A, § 2A4.1. Only where the kidnapping offense involves the sexual exploitation of the victim, as here, does the six-level increase apply. There is no double-counting, as the Base Offense Level does not encompass the additional conduct of sexual exploitation. *See United States v. Walters*, 775 F.3d 778, 782 (6th Cir. 2010) ("Double counting occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways. No double counting occurs if the defendant is punished for distinct aspects of his conduct.") (internal quotations and citations omitted).

Defendant does not argue that the offense did not involve the sexual exploitation of the victim. Nor could he. There was ample evidence at trial that Defendant took the victim into his truck under false pretenses for the purpose of sexually assaulting her, and that during the course of the kidnapping offense, Defendant raped the victim in his truck. Based upon the facts of the instant case, it is clear that Defendant sexually exploited the victim and that the six-level increase

5

in the offense level applies. *See United States v. Johns*, 759 F. App'x 367 (6th Cir. 2018) (court did not abuse its discretion in applying six-level increase under § 2A4.1(b)(5) where defendant kidnapped victim and victim testified that defendant sexually assaulted her at gunpoint).

## IV. **Recommendation**

Based upon Defendant's conviction for kidnapping, the particular offense conduct involved in this case, and Defendant's criminal history, the government recommends a sentence within the applicable Sentencing Guidelines range of 360 months to life imprisonment.

The evidence at trial showed that Defendant planned the kidnapping with which he was convicted, likely in concert with another individual. He carried out that plan by luring the victim into his truck with false promises of a ride from Michigan to her vehicle in Indiana, but having no intention of actually helping her get where she needed to go. Despite the victim's protests, Defendant continued on to Ohio, where he then raped the victim in his truck on the side of the interstate. The victim testified in great detail about how Defendant forced her into the rear area of the cab, told her not to scream, slapped her in the face, threatened her with a weapon, forced her to perform oral sex on him, and then raped her. Even after that, Defendant did not release the victim or bring her to a safe place. Indeed, the only reason this kidnapping ended when it did is because the victim was able to escape and call for help.

The Sentencing Guidelines in this case recommend a very significant sentence of between 360 months and life imprisonment. A sentence in that range is deserved and appropriate. It properly considers the sentencing factors listed under 18 U.S.C. § 3553(a). Most importantly, it reflects not only the seriousness of a kidnapping offense, but the enhanced danger and impact upon the victim when the crime involves sexual assault and the use of a weapon.

Accordingly, the United States respectfully recommends that the Court impose a sentence of imprisonment within the advisory Guidelines range.

                                            Respectfully submitted,

                                            JUSTIN E. HERDMAN
                                            United States Attorney

                         By:   /s/ Peter E. Daly
                                            Peter E. Daly  (OH: 0084745)
                                            Assistant United States Attorney
                                            Federal Building
                                            2 South Main Street
                                            Akron, OH 44308
                                            (330) 761-0529
                                            Peter.Daly@usdoj.gov