UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NOS. 5:19-cr-228 |
| ) | 5:22-cv-1863 |
| ) | |
| ) | |
| PLAINTIFF, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION |
| ) | |
| ANTHONY L. INGRAM, ) | |
| ) | |
| ) | |
| DEFENDANT. ) | |

Before the Court is the *pro se* motion of defendant Anthony L. Ingram ("Ingram") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 66 (Motion).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 69 (Response); Doc. No. 70 (Supplemental Response)), and Ingram has filed a reply. (Doc. No. 73 (Reply).) For the reasons set forth below, Ingram's motion to vacate is DENIED.

I.   **BACKGROUND**

On April 9, 2019, an indictment issued charging Ingram with one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1); and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1). (Doc. No. 1 (Indictment).) The charges related to an incident on August 10, 2018, wherein it was alleged that Ingram, a long-haul semi-truck driver, lured the victim ("H.K.") into his truck under false pretenses, kept her against her will, and eventually raped her before she was able to escape at a turnpike rest stop. Ingram proceeded to trial in October 2019 and the

government dismissed the obstruction charge prior to trial. During the course of the trial, the jury heard testimony from H.K., members of law enforcement who participated in the investigation, and forensics personnel who conducted medical and other tests.

At trial, the government presented evidence that Ingram paid another truck driver, Austin Redmon ("Redmon"), to acquire H.K. Redmon had met H.K. online and had encouraged her to travel with him in his truck. H.K. testified that during the week they were together, she and Redmon had a consensual sexual relationship before she decided she wanted to go home to Indiana. (Doc. No. 54 (Trial Transcript), at 24[1]–5, 29–35.) Redmon told H.K that he had arranged for Ingram to drive H.K. back to her car in Indiana. (*Id*. at 30–7.) Accordingly, H.K. began to ride with Ingram. When H.K. realized that Ingram was not traveling in the direction of her car, she confronted Ingram, who informed her that he had to go to Maryland with her before he could take her to Indiana. She told Ingram that she did not have time to travel to Maryland and that she needed to get to her vehicle immediately, in response to which Ingram simply responded with "sorry." Ingram eventually pulled his truck over to the side of the road and forced H.K. to perform oral sex on him and forcibly had intercourse with her, after he slapped her across the face and threatened her with a weapon that turned out to be a BB gun. (Doc. No. 57 (Trial Transcript), at 200–01; Doc. No. 54, at 39–69.) When H.K. resisted, Ingram told her that he had "bought" her from Redmon for $500.00 and that, "we are going to do what I say." (Doc. No. 54, at 57.)

H.K. was eventually able to get away from Ingram at a rest stop and use a telephone at a restaurant to call 911 and report that she was "sold in sex trafficking." The restaurant manager hid

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

H.K. behind the counter in case Ingram came into the rest stop looking for her. Ingram left the rest stop minutes later and was eventually arrested by police. (*Id*. at 70–9.) Using GPS tracking information from Ingram's truck, investigators located H.K.'s belongings—including her cell phone (with the battery removed) and clothes—in a ditch next to the interstate miles away from the rest stop. (Doc. No. 58 (Trial Transcript), at 41, 133–43; Gov't Exhibits 213, 217.) H.K. was taken to a hospital where a sexual assault examination was performed and a rape kit administered. (Doc. No. 54, at 160, 172–205.) The test results revealed Ingram's sperm DNA on H.K.'s vaginal swabs, underwear, and inner thigh, and Ingram's non-sperm DNA on her face, consistent with a face slap. (Doc. No. 57, at 13–17, 20.)

At the conclusion of the five-day trial, the jury returned a guilty verdict against Ingram on the kidnapping charge. (Doc. No. 35 (Verdict).) The jury also answered a special interrogatory finding that Ingram willfully transported H.K. without her consent in interstate commerce and used a semi-trailer truck to do so, "a means, facility or instrumentality of interstate or foreign commerce." (*Id*. at 2.) On February 27, 2020, the Court sentenced Ingram to a term of imprisonment of 360 months, to be followed by five years of supervised release. (Doc. No. 47 (Judgment); Minutes of Proceedings [non-document], 2/27/2020.)

Ingram took a direct appeal in which he challenged the legal sufficiency of the evidence; the admission of certain evidence, including evidence relating to internet searches performed by Ingram and various websites he visited with pornography involving rape; and the propriety of the Court's jury instructions. In a decision dated March 12, 2021, the Sixth Circuit rejected each of these arguments and affirmed the Court's judgment. (Doc. No. 62.) In finding that there was sufficient evidence to support the jury's verdict, the Sixth Circuit determined that "a reasonable

juror could find that H.K. was held against her will where Ingram took her phone, slapped her in the face, threatened her with what she thought was a gun, forcibly raped her, and continued to drive her away from her car for about an hour after the rape, while she was scared and plotting a way to escape." (Doc. No. 62, at 15.) Ingram petitioned the Supreme Court for certiorari review but was denied on October 6, 2021. (Doc. No. 65 (Appeal Order).)

On October 13, 2022, Ingram filed the present motion to vacate. He raised six grounds for relief: three sounding in ineffective assistance of counsel, two asserting prosecutorial misconduct, and one claim raising judicial abuse of discretion.

## II.  STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41

L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not especially onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he

5

presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id.* (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Ingram has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Ingram in support of the present motion are either contradicted by the record or are adverted to in a perfunctory and conclusory manner, preventing further review by this Court.

### III. DISCUSSION

Ingram grounds his first three claims in the Sixth Amendment right to effective assistance of counsel. To prevail on an ineffective-assistance-of-counsel claim, [Ingram] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, Ingram must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address

the *Strickland* prongs in any order and need not address both prongs if Ingram "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential[.]" *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won.") (citing *Strickland, supra*.).

    A. **Opening Statements/Prevented from Testifying (Ground One)**

In his first ground, Ingram alleges that trial counsel "stated to the jury during opening [statements] that people who sit in the witness chair are sworn to tell the truth. The rest of us are not sworn to tell the truth." (Doc. No. 66, at 4.) He also insists that his counsel "compelled" him not to take the witness stand. (*Id*.) While the Court agrees with the government that the relationship between these two arguments is not entirely clear, Ingram appears to posit that trial counsel impermissibly vouched for the witnesses when he reminded the jury that individuals who sit in the

7

witness box are sworn to tell the truth. Apparently, Ingram believes that the effects of this impermissible vouching were magnified when Ingram did not take the stand in his defense.

>During his opening statement, defense counsel advised the jury as follows:
>
>The Judge has already instructed you that what we say is not evidence. You'll notice I'm not sworn to tell the truth here. The people that are sworn sit in that chair over there, the witness chair. And the people who are sworn are you folks, who swear that you would reach a just verdict in this case. The rest of us aren't sworn.
>
>And we do our homework. You know, we talk to witnesses, and we think we know what the witnesses are going to say. And I'm sure that the government wouldn't mislead you and I wouldn't mislead you.
>
>But there are times when we talk to a witness on Monday, and Wednesday when it comes to their testimony it doesn't turn out the way we thought it would turn out. Or [we] may not call a witness that we told you we would call for various reasons.
>
>But see, that's because the evidence in this case is not what we say in opening, in closing, [or] in voir dire. The evidence comes from the chair, from that witness chair.
>
>So I wouldn't mislead you, and I don't mean to mislead you. But we've done our homework, and I think this is an opportunity for us, both sides, to talk to you about what we view the evidence may very well show in this case.

(Doc. No. 54, at 12–13.)

Counsel's statements regarding witness testimony represented an accurate statement of the law, as only witnesses and jurors are administered an oath during the course of a criminal trial. Moreover, it is clear from counsel's remarks that his intent was to mitigate the impact of any inconsistencies between his forecast of what the evidence will be and what actually transpires in at trial. He accomplished this by explaining that it is hard to predict how someone will testify until they are placed under oath and are asked to testify in open court. Hedging his trial predictions, rather than overpromising what the evidence would show, was a sound trial strategy that cannot be considered ineffective. *See Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("A

8

strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." (citation omitted)).

Ingram also maintains in conclusory fashion that his trial counsel "compelled" him not to testify, and that when he did not take the stand, counsel's opening statement created in the jury an unfavorable opinion of him. He fails to explain how he was "compelled" or what steps, if any, his counsel took to prevent him from testifying.

It is well established that a criminal defendant has a constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 52–53 & n.10, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). When a tactical decision is made by an attorney that a defendant should not testify, however, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000); *see also United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (defendant can waive even a fundamental right, such as the right to testify). In this case, however, there is no need to presume from Ingram's silence at trial his assent to his counsel's strategy because the Court inquired of Ingram's decision not to take the witness stand. In a thorough colloquy, the Court specifically advised Ingram of his right to testify, and ensured that he understood that right. The Court also made sure that his decision not to testify was his alone and that it was made after sufficient opportunity to discuss the matter with his counsel. The Court further confirmed that no one had forced Ingram or coerced him into making the decision, and that he had made the decision knowingly and of his own free will. (Doc. No. 58, at 164–67.) Ingram's conclusory allegation that he was somehow "compelled" to remain silent is clearly belied by the record.

Ingram also fails to demonstrate prejudice. Ingram provides no details about the substance

9

of his testimony, or how any testimony he could have provided would have resulted in a different verdict. Ingram's vague suggestion that it was "extremely important for Ingram to be called to the chair [witness stand,]" fails to affirmatively demonstrate that any advice or actions by counsel that contributed to his decision not to testify prejudiced him. *See Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (The defendant's "speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*." (citation omitted)); (Doc. No. 73, at 3.) And, in any event, the Court instructed the jury that Ingram had an absolute right not to testify, that the fact that he did not testify in this case could not be considered in any way, and that the jury was not even allowed to discuss it in their deliberations. (Doc. No. 59, at 17–18.) Accordingly, his suggestion that his failure to be called as a witness and administered the oath to provide truthful testimony created a negative inference is without merit.

Because Ingram has not demonstrated that his counsel was ineffective, or that any ineffectiveness prejudiced him, he is not entitled to relief on his first ground.

### B. **Failure to Subpoena Witnesses (Ground Two)**

In his second ground for relief, Ingram alleges that his trial counsel was ineffective for failing to call two individuals as fact witnesses: Travis Jarman and Redmon. He claims that Redmon was an "extremely important witness" who was the only person who could "verify the fact that the victim knew that it was Ingram's plan [] to first drop of his load in Maryland prior to taking the alleged victim back to her car." (Doc. No. 66, at 5 (capitalization omitted).) In his motion, he offers no explanation as to the testimony that Jarman might have offered if called as a witness.

"[T]he decision whether to call a witness to testify at trial is a matter of strategy that falls

squarely within defense counsel's domain[,]" *Jarvaherpour v. United States*, Nos. 4:01-cr-11, 2007 WL 1041266, at *3 (E.D. Tenn. Apr. 6, 2007), and for this reason, "[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant[.]" *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation marks and citations omitted). In light of this discretion, "[t]o present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result." *United States v. Benchick*, 619 F. Supp. 3d 798, 805–06 (E.D. Mich. 2022) (quoting *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003)).

Jarman was the manager of the trucking company for which Ingram and Redmon worked. (Doc. No. 58, at 11.) According to the lead investigator, Trooper Michael Gurlea, Jarman provided GPS and trip logs to investigators and assisted law enforcement in tracking both Ingram and Redmon following the sexual assault. (*Id.* at 11, 44, 61, 86–88.) Ingram's motion provides no details or even a general description of what exculpatory testimony he could have offered, let alone how such testimony would have changed the outcome in this case. Ingram has failed to meet his burden of demonstrating ineffectiveness or prejudice from a failure to call Jarman.[2] *See, e.g.,*

---

[2] In his reply, Ingram argues for the first time (and without any support) that Jarman would have testified that there was a video recording of the cab in Ingram's semi-truck that would have provided an "inside look" of what "really happened[;]" that it was Redmon, and not Ingram, who was planning to abandon H.K.; and that Jarman was in contact with both Redmon and Ingram and could have given "an account of what he knew[.]" (Doc. No. 73, at 8–9.) He argues that this would have shown that the google searches Ingram performed (relating to whether it was legal to abandon someone at a rest area) were actually for Redmon. (*Id.* at 8.) It is well settled that arguments raised for the first time in a reply brief are waived. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). Further, Ingram's vague and cryptic references to Jarman's expected testimony are insufficient. *See Pillette v. Berghuis*, 408 F. App'x 873, 887–88 (6th Cir. 2010) (speculation that a witness would provide favorable testimony cannot establish "either unreasonable performance or prejudice"). And, even if the Court considered these arguments on the merits, they would fail to exonerate Ingram. Regardless of who hatched the plan, Jarman's non-eyewitness testimony would not have demonstrated that Ingram did not hold H.K. against her will or forcibly rape her in his truck.

11

*Newman v. United States*, No. 2:18-cv-118, 2021 WL 4079364, at *3 (E.D. Tenn. Sept. 8, 2021) (defendant did not provide affidavits or other affirmative evidence demonstrating that the witness had exculpatory testimony and would have provided it if called to testify).

Ingram has also failed to demonstrate that his counsel was ineffective for failing to call Redmon. The evidence at trial established that Redmon had "sold" H.K. to Ingram for $500.00, and had blocked H.K. on social media and deleted his number from H.K.'s phone so that she had no ability to contact him immediately before she left with Ingram. (Doc. No. 54, at 42–3, 107–08.) Forensic examination of Ingram's phone showed that he and Redmon were in constant communication before, during, and after the assault, including at the time Ingram stopped his truck by the side of the road to dispose of H.K.'s personal possessions. (Doc. No. 57, at 188; Doc. No. 58, at 112–3, 143.) There was also testimony from investigators that Redmon abandoned his semi-truck in a Walmart parking lot in central Ohio early the day of the rape, and that further efforts to locate Redmon proved unsuccessful. (Doc. No. 58, at 22, 50–3.)

Against this backdrop, counsel's decision to forego calling a witness who was implicated in the kidnapping was a reasonable one. *See Goldsby v. United States*, 152 F. App'x 431, 436 (6th Cir. 2005) (finding no ineffective assistance of counsel where defense counsel elected not to call a witness who would have likely supported the government's theory that the drugs belonged to the defendant). Of course, counsel would have first had to locate Redmon, and if he had accomplished this, it is entirely likely that Redmon would have exercised his Fifth Amendment right to remain silent. *See, e.g., Valentin v. Woods*, No. 19-cv-11068, 2023 WL 415152, at *8 (E.D. Mich. Jan. 25, 2023) (counsel was not ineffective for failing to call a witness who would have likely invoked the Fifth Amendment on the witness stand (citing *Ross v. United States*, 339 F.3d 483, 493–4 (6th Cir.

12

2003))). Given the deferential standard applied to counsel's decisions, the failure to call this potentially dangerous witness "was not objectively unreasonable." *Goldsby*, 152 F. App'x at 436.

Ingram's second ground for relief is without merit and is denied.

### C. **Failure to Obtain Evidence (Ground Three)**

Ingram also suggests that his trial counsel was ineffective for failing to subpoena the video and audio recordings of the cab of Ingram's truck. (Doc. No. 66, at 7.) Without elaboration, he insists in his motion that this evidence was "extremely vital because it was directly related to [Ingram's] guilt or innocence." (*Id*. (capitalization omitted).) Ingram does not allege what the recordings would have shown or explain how they would have altered the course of the trial. It is well settled that perfunctory and undeveloped arguments, "unaccompanied by some effort at developed argumentation[,]" are waived. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (citation omitted); *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." (citations omitted)).

Moreover, Ingram offers no evidence that such recordings even exist, and there is nothing in the record that would support their existence. Indeed, investigators conducted a full search of the cab of Ingram's truck pursuant to a search warrant. (Doc. No. 57, at 75–86; Doc. No. 58, at 21.) Nowhere in their testimony from several witnesses about that search or in the thorough set of photographs taken of the inside of the cab and presented at trial was there any indication that the cab was equipped with video or audio recording equipment. The government presented testimony and evidence that showed that investigators obtained GPS records, truck logs, phone records, highway toll plaza video and records, truck stop surveillance video, a 911 recording, and other

13

media records evidence. Entirely absent from this evidence was any indication that such recordings existed. In fact, the government represents that investigators checked and verified that there was no such recording equipment inside the truck. (Doc. No. 69, at 19.)

Because Ingram has failed to provide any details to establish that a subpoena would have actually produced such evidence, and he has further failed to explain how any such evidence, if it existed, would have changed the outcome at trial, he can meet neither prong of the *Strickland* ineffectiveness test.[3] He has, therefore, fallen short of his burden to demonstrate ineffective assistance of counsel as to this claim.

D. **Charging Decision (Ground Four)**[4]

In Ground Four, Ingram alleges prosecutorial misconduct in the government's decision to charge him with the offense of kidnapping rather than soliciting a prostitute. (Doc. No. 66, at 8.) In support, he underscores that "one of the government[']s key witness[es], H.K., stated that Ingram paid Redm[o]n $500.00 for the alleged victim." (*Id.* (capitalization omitted).) This claim

---

[3] In his reply, he offers for the first time additional facts and arguments. He suggests (without support) that the evidence exists because the truck was equipped with a QualComm recording system, and he insists that the video would have "painted a different picture" of what happened because it would have somehow shown that H.K. was free to leave at any time, that Ingram did not threaten her with the BB gun, that he never hit H.K, and that he never said that H.K. had to do what he said because he purchased her. (Doc. No. 73, at 10–12.) Again, arguments raised for the first time in a reply brief are waived. *See United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("We will generally not hear issues raised for the first time in a reply brief"); *see, e.g., Hadley v. United States*, No. 1:06-cr-5, 2010 WL 2573490, at *6 (W.D. Mich. June 22, 2010) (declining to address an additional argument that counsel was ineffective because it was raised for the first time in the reply brief). Moreover, in light of the record that clearly suggests that no such recording device was present in the cab, it was Ingram's burden to provide some affirmative evidence supporting his claim. His unsupported arguments are insufficient to warrant relief.

[4] As an initial matter, the Court finds that Grounds Four–Six are procedurally defaulted. The procedural default doctrine bars "claims that could have been raised on direct appeal[] but were not[,]" except for those claims of ineffective assistance of counsel. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *see Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (A motion to vacate under § 2255 is not a substitute for a direct appeal.) There is no dispute that Ingram failed to raise these claims on direct review, despite being aware of the factual basis for these claims at the time his case was on appeal, and he has provided no excuse for the default. *See, e.g., Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. 2014) ("Sullivan has procedurally defaulted on any *Brady* claim concerning these documents because his appellate counsel, who had the documents, did not raise these claims on direct appeal"). Nevertheless, in an abundance of caution, the Court will address the merits of the remaining claims.

14

is both legally and factually without merit.

A prosecutor has broad discretion in deciding what charges to pursue and the prosecutor's charging decisions are generally not subject to review by the courts. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 57 L. Ed. 2d 604 (1978); *see United States v. Batchelder*, 442 U.S. 114, 124, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." (citing cases)); *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996) ("The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." (quoting *Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (further citation omitted))); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15, 47 S. Ct. 1, 71 L. Ed. 131 (1926) (noting that the "presumption of regularity supports" prosecutorial decisions, and "in the absence of clear evidence to the contrary, courts presume they have properly discharged their official duties").

As discussed above, the Sixth Circuit has found that there was sufficient evidence to support Ingram's conviction for kidnapping. (Doc. No. 62, at 15–16.) There is also nothing in the record to suggest that the government's charging decision was vindictive or based on any

impermissible factors.[5] Ingram fails to demonstrate that the government abused its discretion or violated any constitutional principles by charging Ingram with kidnapping, and habeas relief is not warranted on this claim.[6]

### E. Prosecutorial Misconduct (Ground Five)

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction[.]" *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

Related to Ground Three, Ingram alleges in Ground Five, in conclusory fashion, that the government "failed to take steps to acquire the GPS [and] audio and video recordings from Ingram's truck." (Doc. No. 66, at 11 (capitalization omitted).) For reasons previously discussed, Ingram has failed to show that the recordings even exist, let alone that the admission of any such recordings would have changed the outcome of the trial. Moreover, as discussed above, despite efforts by the government during the course of the investigation, there is no evidence that the government ever discovered the existence of any recordings. *See generally United States v.*

---

[5] In his reply, Ingram complains for the first time that he was charged with kidnapping, while Redmon was not so charged. (Doc. No. 73, at 12.) Yet, he has not demonstrated that the decision to charge him and not Redmon was based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962). Putting aside the waiver of the argument that he was the victim of selective prosecution, Ingram fails to offer any evidence that would support such a claim.

[6] Ingram's argument is also frivolous as it relates to the facts of the case. The evidence at trial demonstrated that H.K. was involuntarily held against her will and forcibly raped. The fact that money changed hands between Ingram and Redmon does not transform an act of kidnapping and sex trafficking into a voluntary exchange of sexual services for financial gain.

*Skaggs*, 327 F.R.D. 165, 174 (S.D. Ohio 2018) (the government has no duty to turn over evidence that is not in its possession). Ingram's citation in his reply brief to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), does not change that conclusion. *See Strickler v. Greene*, 527 U.S. 263, 280–81, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (Under *Brady*, a violation occurs when the government fails to turn over material evidence, that which had it been disclosed, "the result of the proceeding would have been different." (quotation marks and citations omitted)).

For all of these reasons, as well as the reasons stated in the Court's discussion of Ground Three, Ingram has failed to demonstrate the existence of prosecutorial misconduct. Ground Five, therefore, fails.

F.  **Failure to Order a Mental Health Evaluation (Ground Six)**

Ingram also alleges that the Court "abused its discretion by failing to have Ingram evaluated for drug use and mental health." (Doc. No. 66, at 11 (capitalization omitted).) The impetus for this final ground appears to be the fact that the Presentence Investigation Report ("PSR") reflects that Ingram "used drugs while awaiting trial." (*Id.*; *see* Doc. No. 42 (PSR) ¶ 43 (noting Ingram self-reported that he received unidentified medication for anxiety while incarcerated in this case), ¶ 45 (noting Ingram self-reported that he attended a drug addiction treatment program in 2017).)

"Title 18 U.S.C. § 4241(a) requires a district court, if reasonable cause exists to believe that a defendant is mentally incompetent to stand trial, to order sua sponte a hearing to determine the defendant's competency." *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008). "A criminal defendant is incompetent if he lacks 'sufficient present ability to consult with his lawyer

17

with a reasonable degree of rational understanding' or if he does not have 'a rational as well as factual understanding of the proceedings against him.'" *Id*. (quoting *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)). "In determining a defendant's competence, the court considers several factors, including 'evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial.'" *Id* (quoting *Drope*, 420 U.S. at 180).

The record does not support Ingram's claim that he was incompetent to stand trial. Rather, the record shows that Ingram was able to consult with his attorney during trial, engage in colloquies with the trial judge, and make an informed decision regarding his desire to testify at trial. *See Miller*, 531 F.3d at 350 (finding no reasonable cause to conduct a competency hearing despite remark in PSR that writer believed defendant needed mental health counseling). The Court had the opportunity to observe Ingram throughout these proceedings, and there was nothing about his demeanor that would have suggested that he was incompetent to stand trial. *See, e.g., United States v. Elliot*, No. 2:11-cr-21, 2014 WL 389304, at *1 (E.D. Ky. Aug. 8, 2014) (finding claim that a plea was not knowing and voluntary because defendant had been on psychiatric medications "meritless"). Accordingly, this final ground for relief is without merit and is denied.

## IV. CONCLUSION

For the foregoing reasons, Ingram's motion to vacate, set aside, or correct his sentence is denied. Further, for all of the same reasons, the Court finds that "reasonable jurists" would not debate the Court's denial of Ingram's motion to vacate. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: September 27, 2023

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**